UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
UNITED STATES OF AMERICA,

      v.

DAMON MONK, KAREEM WEST,
JAMAL WINDLEY, and DARREN
FINKLEA,

      Defendants.
--------------------------------------------------X

**MEMORANDUM & ORDER**
**06-CR-642 (NGG) (RML)**

GARAUFIS, District Judge.

  Damon Monk and his three co-defendants are charged with one count of conspiracy to distribute cocaine and MDMA, one count of distributing cocaine and MDMA, and one count of using drug-related premises. Monk moves the court to controvert a search warrant issued by the New York Supreme Court, Kings County and to suppress all evidence seized pursuant to the warrant.[1,2] (Not. Mot. ¶¶ 1-2.) For the reasons set forth below, Monk's motion is DENIED.

**I. Background**

  On August 21, 2006, a confidential informant ("Informant") told officers of the New York City Police Department ("NYPD") that illegal narcotics were being sold out of Apartment 4A in the building located at 1550 East New York Avenue, Brooklyn, New York ("Apartment").

---

 [1] Co-defendants Kareem West and Jamal Windley have entered guilty pleas pursuant to plea agreements. Monk's remaining co-defendant, Darren Finklea, has not joined in any aspect of the present motion.

 [2] Monk has also moved the court to suppress cellular telephones and other items allegedly seized beyond the scope of the warrant. (Not. Mot. ¶ 3.) The Government has represented that it will not offer into evidence those cellular telephones or any evidence gleaned from them. (Govt. Br. at 14 & n.6.) That aspect of the motion is therefore moot.

1

(Govt. Br. at 3.) More specifically, the Informant told NYPD officers that he had purchased marijuana in the Apartment and had seen crack cocaine there. (Redmond Aff. (Govt. Ex. B) ¶ 4.)

On August 22, 2006, NYPD Police Office Joseph Redmond filed an affidavit in the Supreme Court of the State of New York, King County in support of his application for a warrant to search the Apartment. His application was considered by Justice Jill Konvisor, who took sworn testimony from both Officer Redmond and the Informant. (Tr. (Govt. Ex. A).) Based on that testimony and Officer Redmond's affidavit, Justice Konvisor granted the application and issued a search warrant. (Govt. Ex. C.)

On August 23, 2006, NYPD officers executed the search warrant. (Govt. Br. at 4.) Their search of the Apartment, where they found all four Defendants, revealed more than 100 grams of crack cocaine, more than 70 ecstasy pills, a small quantity of heroin, large amounts of United States currency, a loaded nine-millimeter magazine, and additional ammunition. (Id. at 4-5 & n.4.)

## II. Analysis

Monk argues that the search warrant was not supported by probable cause because "[t]here is no indication that this informant, who is unnamed, was previously reliable or had given information in the past." (Wallenstein Aff. ¶ 4.) The Government argues that the good-faith exception applies, such that the court need not even consider whether the warrant should have issued, and that in any event the warrant was supported by probable cause.

### A. The Good-Faith Exception

The Government argues that the court need not consider whether the warrant was properly issued because the searching officers acted in reasonable reliance on a judicially issued

2

search warrant. (Govt. Br. at 12-14.) This court agrees. When an officer conducts a search in good-faith reliance on such a warrant, the exclusionary rule does not require the suppression of evidence – even if the warrant is later shown to be defective. U.S. v. Cancelmo, 64 F.3d 804, 807-08 (2d Cir. 1995) (citing United States v. Leon, 468 U.S. 897 (1984)). There is good reason for the good-faith exception:

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

Leon at 919 (quoting United States v. Peltier, 422 U.S. 531, 539 (1984) and Michigan v. Tucker, 417 U.S. 433, 447 (1974)).

Monk agrees that the executing officers acted pursuant to a search warrant, but he argues that the good-faith exception does not apply because the search warrant was based in part on the affidavit and testimony of Officer Redmond, who then helped execute the search warrant. In effect, Monk argues that a police officer cannot rely in good faith on a warrant issued in reliance on his own testimony. This court disagrees.

When an officer conducts a search pursuant to a judicially issued warrant, the good-faith exception applies unless (1) the judge who issued the warrant was misled by information in an affidavit and the affiant knew or recklessly disregarded that the information was false or (2) the warrant was so facially deficient (in the sense that it failed to identify the place to be searched or

3

things to be seized) that the searching officer cannot reasonably have presumed it was valid.[3] Leon, 468 U.S. at 923.  If the affiant is the executing officer, and he did not knowingly or recklessly mislead the judge who issued the warrant, then no law or policy suggests that the good-faith exception does not apply.  This court declines to enjoin the NYPD from using an officer who investigated a case to both (1) testify as to the facts, characters, and locations relevant to the case for the purpose of obtaining a search warrant and (2) execute that warrant.  Common sense suggests that the same officer will often be best qualified to perform both tasks.

Because Monk has not identified a single false piece of testimony before Justice Konvisor, let alone argued that any testimony before her was knowingly or recklessly false, this court finds that the good-faith exception applies.

### B. Probable Cause

In order to issue a search warrant, a judge must find that probable cause exists to believe that (1) a crime has been committed and (2) evidence of the crime will be found in the place to be searched.  United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983).  When the warrant is based on information obtained from a confidential informant, a court must "assess the information by examining the 'totality of the circumstances' bearing upon its reliability."  United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting Illinois v. Gates, 462 U.S. 213, 230-31 (1983)).  The court should consider such factors as the informant's "veracity, reliability and basis of knowledge . . . and the extent to which [the] informant's statements – even about a suspect's innocent activities – are independently corroborated."  United States v. Gagnon, 373 F.3d 230, 235 (2d Cir. 2004).

---

[3] Monk does not argue that the second circumstance applies to this case.

I find that Justice Konvisor had probable cause to issue the search warrant. Before I address the Informant's testimony, I note three relevant principles. First, the Supreme Court has held that "the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination." Leon, 468 U.S. at 914 (citations and quotation marks omitted). Second, information provided face-to-face is more reliable than other information. United States v. Salazar, 945 F.2d 47, 50-51 (2d Cir. 1991). Third, information provided via testimony, under penalty of perjury, is "significantly more reliable" than other information. United States v. Hernandez, 85 F.3d 1023, 1028 (2d Cir. 1996).

In this case, the search was conducted pursuant to a warrant issued by a Justice Konvisor. (Govt. Ex. C).) This court must accord "great deference" to the Justice Konvisor's determination that probable cause existed. Leon at 914. Her determination was based on the face-to-face testimony of the Informant (Tr. (Govt. Ex. A) at 4-8) and the face-to-face testimony and sworn affidavit of Officer Redmond (id. at 2-4; Redmond Aff. (Govt. Ex. B)), all offered under penalty of perjury. All of the information underlying Justice Konvisor's determination was therefore more reliable or significantly more reliable than other forms of information upon which warrants issue. Salazar at 50-51; Hernandez at 1028.

In addition, that information bore other indicia of reliability. The Informant testified that he had visited the Apartment more than ten times, had been in the building in which the Apartment is located "approximately every day," and saw drugs in the Apartment the last time he visited it. (Tr. (Govt. Ex A) at 5-8.) He also told Officer Redmond that a photograph of Monk depicted the person who had sold drugs to the Informant in the Apartment. (Redmond Aff. (Govt. Ex. B) at 2.) Officer Redmond independently determined, based on NYPD records, that

5

Monk lived in the Apartment. (Id.) All of this information was presented to Judge Konvisor. I therefore find that Justice Konvisor had probable cause to believe that (1) a crime had been committed and (2) evidence of the crime would be found in the Apartment. Travisano, 724 F.2d at 346.

## III. Conclusion

For the foregoing reasons, Monk's motion to suppress evidence obtained pursuant to the search warrant issued by Justice Konvisor on August 22, 2006 is DENIED.


SO ORDERED.

Dated: June 29, 2007                                              /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.                                     NICHOLAS G. GARAUFIS
                                                                  United States District Judge